UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

VLADIMIR BATHOLD,

                 Plaintiff,

    -against-                                       25-cv-3045 (CM)

HUGO BOSS RETAIL, INC.,

                 Defendant.

---------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/10/2026

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

Plaintiff Vladimir Bathold ("Plaintiff") brings this action against his former employer, Defendant Hugo Boss Retail, Inc. ("Defendant"), for disability discrimination and retaliatory termination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"), the New York State Human Rights Law ("NYSHRL" or "State Law"), and the New York City Human Rights Law ("NYCHRL" or "City Law").

Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is GRANTED with prejudice as to the federal claims and without prejudice as to the State and City Law claims.

### BACKGROUND

Unless otherwise noted, the facts are drawn from Plaintiff's First Amended Complaint. *See* Dkt. No. 18. In accordance with the standard for assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all non-conclusory allegations and draws all

reasonable inferences in Plaintiff's favor. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Defendant Hugo Boss Retail, Inc. operates retail clothing stores, including in New York City.

Plaintiff Vladimir Bathold was employed by Defendant as an Operations Associate from May 31, 2022 until his termination on April 20, 2023. His job duties included monitoring shipping logistics on Defendant's software system, preparing packages for shipping and handling damaged returns (which required lifting and carrying packages around the warehouse), and counting stock in the warehouse. Plaintiff was also responsible for supervising the stock of Defendant's World Trade Center and SoHo stores.

On February 7, 2023, Plaintiff "injured his hand and sprained his wrist" while on his way to work. FAC ¶ 19. He immediately informed his manager, JP Ventura, of the injury. While receiving treatment at the hospital, Plaintiff was "advised by a physician that the injury may involve nerve damage." *Id.*

Plaintiff was released from the hospital on February 9, 2023. That same day, Plaintiff went to Defendant's premises and submitted hospital documentation indicating that he was cleared to return to work. Plaintiff's other manager, Luis Pacheco, requested "return to work" forms confirming Plaintiff's fitness to resume employment following his injury.

Despite Plaintiff's injury, he was physically able to return to work "only a few days" after he was injured, and "continued to be able to perform his job responsibilities." FAC ¶ 35.

After Plaintiff's injury, his general practitioner continued to monitor his wrist and provide treatment. Plaintiff continued to receive medical treatment throughout February and was referred to a hand specialist, who he saw twice. Plaintiff's injury was reevaluated on February 21. The next

2

day, Plaintiff returned to the workplace and submitted updated medical documentation to Pacheco along with his completed return-to-work forms. Pacheco stated that he would forward the paperwork to Human Resources and would inform Plaintiff once clearance to return had been granted.

Plaintiff followed up with Pacheco by phone on February 25 regarding his return-to-work status. Pacheco informed Plaintiff that he had not yet received a response from Human Resources and had sent a follow-up text. Plaintiff called again on March 9, but again received no response. Plaintiff also sent Pacheco a text message on March 10 to follow up. In addition to contacting management, Plaintiff sent an email to Human Resources. Plaintiff received only a vague response indicating that Defendant would "circle back."

On April 20, 2023, Plaintiff "received official notice from Defendant stating that, according to company records, he was terminated for failure to comply with Defendant's return-to-work documentation policy, which Plaintiff did not recall seeing." FAC ¶ 27. Defendant "claimed it had attempted to contact Plaintiff but received no reply and therefore terminated him." FAC ¶ 28.

## I.    Procedural History

Plaintiff initiated this action by filing his initial complaint on April 11, 2025. *See* Dkt. No 1 ("Complaint"). The Complaint alleged that Defendant violated the ADA, NYSHRL, and NYCHRL when it terminated Plaintiff's employment due to his disability and in retaliation for him requesting accommodations. As a result of Defendant's unlawful acts, Plaintiff "suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits," and has also "endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation." Complaint ¶¶ 31–32, 37–38. The

3

Complaint asserted causes of action for disability discrimination in violation of the ADA (Count 1), the NYSHRL (Count 3), and the NYCHRL (Count 5); retaliatory termination in violation of the ADA (Count 2), the NYSHRL (Count 4), and the NYCHRL (Count 6); and failure to engage in cooperative dialogue in violation of the NYCHRL (Count 7).

After Defendant moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. No. 10, Plaintiff filed his First Amended Complaint ("FAC"). *See* Dkt. No. 18. The FAC provides further factual allegations in support of Plaintiff's claims:

First, the FAC alleges that Plaintiff wore a wrist band for approximately five months to reduce his pain and chances of reinjury, and that although Plaintiff no longer wears the wrist band, "the injury continues to substantially affect his life," as he suffers from recurring pain. FAC ¶ 33. Specifically, "He often suffers from sharp pain and a pins and [needles] sensation and his hand locks up, which forces Plaintiff sometimes to use his healthy hand to physically open the injured hand." *Id.* "The pain caused by the injury and his hand locking up make doing physical labor more difficult for Plaintiff. Particularly, the pain and hand locking up make lifting heavy objects harder. The injury also negatively affected Plaintiff's ability to perform daily tasks, such as brushing his teeth, writing, and performing household chores." FAC ¶ 34.

Next, the FAC includes allegations that Plaintiff was "requesting a reasonable accommodation of a few days off to recover from the injury and to be allowed to return to work once recovered," and that he may have needed additional accommodations, including time off to attend doctor's appointments, but was fired by Defendant before he could return to work. FAC ¶ 36.

Finally, the FAC alleges that "Defendant's proffered reason for terminating Plaintiff was untrue. Plaintiff had made multiple attempts to communicate with Defendant through various channels, including by contacting Human Resources and remaining in communication with his manager, who both told him that they would get back to him to let him know if they needed additional documentation or if he could return to work. They never did, however, despite Plaintiff's repeated attempts to follow up." FAC ¶ 29.

On June 26, 2025, Defendant filed its motion to dismiss Plaintiff's FAC – the motion currently before the Court – arguing that the FAC must be dismissed in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 11.

## LEGAL STANDARD

### I.    Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

## DISCUSSION

The FAC asserts both federal and State/City Law claims relating to disability discrimination. I will dispose of the federal claims first.

## II.    ADA Disability Discrimination Claim (Count 1)

Plaintiff first asserts a claim for disability discrimination, alleging that Defendant violated the ADA by firing Plaintiff because of his disability.

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Discrimination claims under the ADA are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Slater v. NYU Langone Health Sys.*, 2025 WL 2208292, at *4 (E.D.N.Y. Aug. 4, 2025). "In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). "Major life activities" are those of "central importance to daily life," *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (internal quotation marks and citation omitted), such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Defendant moves to dismiss Plaintiff's ADA disability discrimination claim on the grounds that Plaintiff has failed to plead facts tending to show that he was "disabled" under the ADA, that he was qualified to perform the essential functions of his job (with or without accommodations), and that his termination was connected to his alleged disability.

The Court agrees that Plaintiff has failed to plausibly allege that he was "disabled" under the ADA.

Not every impairment is a disability within the meaning of the ADA. The ADA defines a disability as "a physical or mental impairment that *substantially limits* one or more major life activities . . . [or] being regarded as having such an impairment." 42 U.S.C. § 12102(1) (emphasis added). To establish a disability, a plaintiff must: (1) "show that she suffers from a physical or mental impairment"; (2) "identify the activity claimed to be impaired and establish that it constitutes a major life activity"; and (3) "show that her impairment substantially limits the major life activity previously identified." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (internal quotation marks and citation omitted). Courts are to construe this definition broadly and in favor of coverage under the statute. *See Perez v. New York Presbyterian/Weill Cornell Med. Ctr.*, 2024 WL 1514216, at *4 (S.D.N.Y. Apr. 8, 2024).

However, a plaintiff's allegations "must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022), *aff'd*, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) (cleaned up). "Allegations that merely track the language of the statute or vague, conclusory assertions without details on how a plaintiff's condition actually affects a major life activity are insufficient to survive a motion to dismiss." *Baluch v. 300 West 22 Realty, LLC*, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023).

Defendant does not dispute that a hand injury or sprained wrist can constitute physical impairments under the ADA, or that brushing teeth, writing, performing household chores, and lifting heavy items are major life activities. Rather, Defendant argues that Plaintiff has not plausibly alleged that his hand injury and sprained wrist "substantially limited" his ability to engage in those activities, and so has not plausibly alleged a violation of the ADA.

Plaintiff responds that he has met his burden by alleging he "suffered a sprained wrist with potential nerve damage that required him to wear a wristband for five months" and that he "suffers recurring pain, including sharp pain, pins-and-needles sensations, and episodes where his hand locks up and must be manually opened." Dkt. No. 30 at 10. As a result of his injury, Plaintiff alleges, he is "limited in performing everyday tasks such as brushing his teeth, writing, and performing household chores, and has more difficulty lifting heavy items." *Id.*

The Court accepts as true Plaintiff's allegations that his hand injury and sprained wrist cause him pain when he brushes his teeth, writes, performs household chores, or lifts heavy items. But while Plaintiff's burden at the motion to dismiss stage is "minimal," *see Laface v. E. Suffolk BOCES*, 2020 WL 2489774, at *9 (E.D.N.Y. May 14, 2020), his conclusory assertion that his injury "continues to substantially affect his life" is wholly inadequate. FAC ¶ 33. *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024). The FAC contains no allegations from which the Court can infer that Plaintiff's impairment "prevents or severely restricts" him from engaging in major life activities. *Dancause v. Mount Morris Cent. Sch. Dist.*, 2013 WL 2946063, at *6 (W.D.N.Y. June 14, 2013), *aff'd*, 590 F. App'x 27 (2d Cir. 2014). Plaintiff's allegations that his injury makes "doing physical labor more difficult" and "lifting heavy objects harder." FAC ¶ 34, are insufficient; "courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity." *Shine*

*v. New York City Hous. Auth.*, 2020 WL 5604048, at *7 (S.D.N.Y. Sept. 18, 2020). Plaintiff does not allege that he is unable to brush his teeth or to lift heavy objects; he only alleges that he has more difficulty doing these things than he used to because it hurts. That does not qualify as a substantial limitation on a major life activity. *See id.*; *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 306 (S.D.N.Y. 2022), *aff'd*, 2023 WL 8708417 (2d Cir. Dec. 18, 2023); *Nadel v. Shinseki*, 57 F. Supp. 3d 288 (S.D.N.Y. 2014). This is especially true since Plaintiff affirmatively alleges that "he was physically able to return to work only a few days after he was injured" and that he "continues to be able to perform his job responsibilities"– responsibilities that include lifting heavy objects (*see supra* page 2). FAC ¶ 35.

Having failed to plausibly allege that he is disabled or regarded as disabled within the meaning of the ADA, Plaintiff's ADA disability discrimination claim must be dismissed. Since Plaintiff amended his Complaint after Defendant filed a motion to dismiss the original Complaint that identified this issue, and his amendment fails to cure the problem, dismissal is with prejudice.

## III.    ADA Retaliation Claim (Count 2)

Plaintiff next asserts a claim for retaliatory termination – alleging that Defendant violated the ADA by firing him in retaliation for his requesting accommodations for his disability. The accommodation he allegedly sought was "a few days off to recover from the injury and to be allowed to return to work once recovered." FAC ¶ 36.

A plaintiff can establish a *prima facie* case of retaliation under the ADA by showing: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky v. City of New York*,

921 F.3d 337, 353 (2d Cir. 2019)). With respect to causation, a plaintiff must show that "but for" the protected activity, "the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quotation marks omitted). Causation can be established "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

There is no question that Plaintiff's firing constitutes an adverse course of action taken against him. But Plaintiff's ADA retaliation claim fails because – even assuming he has plausibly alleged that he was engaged in a protected activity and that Defendant was aware of his involvement (both tenuous propositions) – he has not plausibly alleged a causal connection between any protected activity and his firing.

The protected activity in which Plaintiff contends that he was engaged in is requesting an accommodation for his disability. Plaintiff argues that he has plausibly alleged a causal connection "based on the temporal proximity between the disclosure of the disability and the adverse action" because he disclosed his disability on February 7 and was fired on April 20 – less than three months later. Dkt. No. 30 at 13–14. Since Plaintiff is the master of his argument, I assume this means that he asked for the accommodation of a few days off at the same time he disclosed his disability.

Defendant argues that the two-and-a-half month gap between Plaintiff's February 7, 2023 disclosure of his alleged disability and his firing on April 20, 2023 is insufficient to support an inference of discrimination. I agree. The United States Supreme Court has held that when a plaintiff relies on temporal proximity to establish a causal connection, the protected activity and adverse employment action must occur "very close" in time. *Clark County School Dist. v. Breeden*, 532

U.S. 268, 273 (2001). While neither the Supreme Court nor the Second Circuit has established a bright-line rule to define "very close," courts in this Circuit "have routinely held that a passage of two months between the protected activity and the adverse employment action defeats any inference of a causal relationship between the two activities." *Kugler v. Donahoe*, 2014 WL 1010317, at *9 (E.D.N.Y. Mar. 17, 2014) (internal quotations omitted); *Walcott v. Cablevision*, 2012 WL 4447417, at *14 (E.D.N.Y. Sept. 24, 2012) (same); *Kamiel v. Hai St. Kitchen & Co. LLC*, 2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) ("The case law has generally treated, at the pleading stage, gaps of two months or less—between disclosure of a disability and an adverse action—as plausibly giving rise to an inference of causation in discrimination cases."). The two-and-a-half month span between Plaintiff's disclosure of his disability (his injury, for which he alleges he sought to take a few days off) and his firing, "in the absence of other evidence of defendant's retaliatory motive, precludes a finding of a causal connection between the protected activity and the adverse employment action." *Garrett v. Garden City Hotel, Inc.*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases). *See also Ponticelli v. Zurich Amer. Ins. Group*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (finding that a "two-and-a-half month" interval "is hardly the close proximity of time . . . for allowing a plaintiff to establish the 'causal connection' element") (citation omitted). There is nothing in the FAC suggesting that Plaintiff has any other evidence of discriminatory animus on the part of his employer.

But there is a bigger problem here. Plaintiff alleges that he was injured on February 7 and returned to work two days later, on February 9, with a doctor's note indicating that he could return to work. Plaintiff also alleges that he was capable of performing his job duties (which included lifting heavy objects) from and after February 9. By no stretch of the imagination can Plaintiff's pleading be interpreted to allege that he suffered from any "disability" when he returned to work.

11

Nor is there any allegation of fact tending to show that at any point prior to his termination Plaintiff was (1) unable to do his job, or (2) perceived by his employers as unable to do his job. Therefore, if Plaintiff dates his "temporal proximity" argument from the date he sprained his wrist (and he does), he has not alleged that he suffered from any disability or perceived disability during the two-and-one-half month "temporal proximity" phase. That alone should be enough to defeat the "temporal proximity" argument.

Additionally, "While a Plaintiff may use temporal proximity to establish causation, he or she may only do so if there are no other allegations that otherwise undercut but-for causation." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018). Here, Plaintiff alleges that on April 20, 2023, he "received official notice from Defendant stating that, according to company records, he was terminated for failure to comply with Defendant's return-to-work documentation policy, which Plaintiff did not recall seeing." FAC ¶ 27. Any inference of causation based on temporal proximity is "defeated by a far more plausible explanation for Plaintiff's termination" – his failure to comply with Defendant's return-to-work documentation policy, which he himself alleges took place. *Anderson v. City of New York*, 712 F. Supp. 3d 412, 428 (S.D.N.Y. 2024); *Brennan v. Legal Aid Soc'y*, 2020 WL 6875059, at *5 (S.D.N.Y. Nov. 23, 2020) (collecting cases); *see also, Amaya*, 295 F. Supp. 3d at 222 (plaintiff could not rely on temporal proximity to establish causation because her failure to provide any requested information to the Corporate Defendants regarding her ability to return to work constituted a significant intervening event which undermined but-for causation).

Plaintiff alleges that Defendant's proffered reason for firing him is "untrue" because he made multiple attempts to communicate with Defendant regarding his return-to-work documentation, and Defendant failed to respond. *See* FAC ¶¶ 27–30. He does allege multiple

12

efforts to communicate, through Pacheco, with Human Resources, and I must assume that Plaintiff's allegations in this regard are true for purposes of this motion.

But that does not help his cause. One cannot infer, from Defendant's failure to respond to Plaintiff's inquiries about the return-to-work documentation, that Plaintiff was fired because he had previously asked to take a few days off (the requested accommodation) in order to heal from his injury (a sprained wrist that did not interfere with his ability to perform his job duties).

Plaintiff's ADA retaliation claim is, therefore, dismissed.

### IV.    NYSHRL and NYCHRL CLAIMS (Counts 3, 4, 5, 6, and 7)

This leaves Plaintiff's claims under the NYSHRL and NYCHRL. Plaintiff asserts that the Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). It does indeed. But it will decline to exercise that jurisdiction if Plaintiff's federal claims are dismissed.

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003). Because the Court has dismissed Plaintiff's federal claims, Plaintiffs' State and City Law claims should also be dismissed. While dismissal of pendent State and City Law claims is not mandatory, *see Marcus*, 138 F.3d at 57, the Court sees no compelling reason to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's claims brought pursuant to the NYSHRL and NYCHRL are therefore dismissed, without prejudice to their assertion in a state court of competent jurisdiction.

### V.    Leave to Amend

Plaintiff seeks leave to file a Second Amended Complaint in the event the Court dismisses any part of his FAC. *See* Dkt. No 30 at 20. Fed. R. Civ. P. 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." Under this liberal standard, leave is generally given as long as (1) the party seeking the amendment has not unduly delayed, (2) that

13

party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, however, leave to amend is properly denied. Plaintiff has already amended his complaint, and did so after seeing Defendants' original motion to dismiss, which made exactly the same arguments about why his ADA claim was deficient that are dispositive here. *See* Dkt. No. 11. His amendment failed to address those deficiencies. Plaintiff does not suggest what he might do to plead that his injury substantially impacted any major life activity if he had leave to amend yet again, and frankly, were he to make such an allegation, it would necessarily conflict with allegations (already identified above) indicating that his wrist injury gave rise to no such impediment. That means any amendment of his federal claims would necessarily be futile. Under the more liberal state and local law standards he might have some claim, but the state courts are perfectly capable of handling any such matter, and I have dismissed those claims without prejudice. Plaintiff is free to sue on those claims in the New York State Supreme Court.

Therefore, I deny Plaintiff's request to be allowed to amend his complaint yet again.

## CONCLUSION

Defendant's motion to dismiss Plaintiff's First Amended Complaint is GRANTED.

The Clerk of Court is respectfully requested to remove the motion at Dkt. No. 22 from the Court's list of open motions.

This is a written opinion.

This constitutes the decision and order of the Court. It is a written decision.

14

Dated: June 10, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL